STATE of Indiana, Appellant–Plaintiff,

v.

Williams JENKINS, Appellee–
Defendant.

No. 49A04–0805–CR–260.

Court of Appeals of Indiana.

Dec. 31, 2008.

Transfer Denied March 5, 2009.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Anna E. Onaitis, Indianapolis, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

The State appeals the trial court's grant of Williams Jenkins' motion to suppress. Specifically, the State contends that because Jenkins, who was arrested for public intoxication and other crimes in the courtyard area of his apartment complex, was intoxicated in a public place, the trial court erred in granting his motion to suppress. We conclude that an outside, unenclosed courtyard area of an apartment complex is sufficiently distinguishable from an interior common area of an apartment building such that *State v. Culp*, 433 N.E.2d 823 (Ind.Ct.App.1982), *trans. denied*, is not controlling. Accordingly, we find that Jenkins was in a public place and reverse the grant of his motion to suppress.

### Facts and Procedural History

On the evening of September 9, 2007, Lawrence Police Department Officer Robert Ferguson responded to 9400 Stouffer Court, which is located in Sutton Place Apartments, to assist Indianapolis Metropolitan Police Department officers with their investigation of shots being fired. When Officer Ferguson arrived on the scene, another officer had five individuals on the ground at gunpoint. Officer Ferguson described the area where the individuals were being detained as follows:

> It's kind of like a courtyard, there's [sic] apartment buildings that are all around the area, it's only open by a front side and back side. There's [sic] apartment buildings on both sides with a sidewalk and grassy plots on both sides.

Tr. p. 6. In addition, there is a parking lot at the end of the courtyard. *Id.* at 23. When Officer Ferguson first saw Jenkins, who was not one of the five people being detained, he was standing "between the buildings on the sidewalk" in the courtyard area. *Id.* at 7, 14. Jenkins was yelling at two security guards employed by the apartment complex. Officer Ferguson approached Jenkins and told him to go back inside his apartment because they were looking for a sixth person and had not yet found the gun.

Jenkins did not go inside his apartment. Instead, Jenkins told Officer Ferguson that he could not tell him what to do and that he was standing on his property. At the time of this exchange, Officer Ferguson and Jenkins were standing on the sidewalk, which was approximately fifteen to twenty feet away from the apartment building. *Id.* at 9. Officer Ferguson told Jenkins several more times to go inside his apartment, and each time Jenkins refused to do so. Instead, Jenkins argued with Officer Ferguson. At this point, Officer Ferguson, who had been trained in recognizing the signs of intoxication, smelled a strong odor of alcoholic beverage on Jenkins' breath and observed that he had bloodshot eyes and slurred speech. Officer Ferguson then instructed Jenkins that if he did not go inside his apartment, he would arrest him for public intoxication. Jenkins then stood "straight up," "as if to challenge" Officer Ferguson. *Id.* at 11. Officer Ferguson then reached to place Jenkins into custody, but Jenkins jerked away. At this point, a woman tried to step in between Officer Ferguson and Jenkins. Lawrence Police Department Officer Shawn Romeril intervened. The officers took Jenkins to the ground, where he continued to pull away from the officers and push himself up off the ground. Eventually Officer Romeril tasered Jenkins, and he was handcuffed.

The State charged Jenkins with Class A misdemeanor resisting law enforcement, Class B misdemeanor public intoxication, and Class B misdemeanor disorderly conduct. Jenkins "mov[ed] to suppress," claiming that his initial arrest for public intoxication was illegal because he was in a "private place." *Id.* at 11–12, 35. A hearing was held. At the hearing, a videotape of the events was played, starting with Officers Ferguson and Romeril walking up to Jenkins and ending with Jenkins being handcuffed. At the conclusion of the hearing, the trial court ruled as follows:

> I'm granting the Motion to Suppress and my reasoning being is *State v. Culp,* 433 N.E.2d 823 regarding the common areas of the apartment complex. I don't like it, I don't particularly like the public definition but I have to follow the law and I believe that that is not a public place.

*Id.* at 40. The State now appeals the trial court's grant of Jenkins' motion to suppress.

## Discussion and Decision

▄▄ The State contends that the trial court erred in granting Jenkins' motion to suppress. When the State appeals the trial court's grant of a defendant's motion to suppress evidence, the State is appealing from a negative judgment. *State v. Davis,* 770 N.E.2d 338, 340 (Ind.Ct.App. 2002). Consequently, the State has the burden of demonstrating to us that the evidence is without conflict and that the evidence and all reasonable inferences therefrom lead to the conclusion opposite that reached by the trial court. *Id.* During our review, we consider only the evidence most favorable to the judgment, and we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

▄▄ The offense of public intoxication is governed by Indiana Code § 7.1–5–1–3, which provides: "It is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance." " 'The spirit of the public intoxication statute is to prevent people from becoming inebriated and then bothering and/or threatening the safety of other people in public places.' " *Jones v. State,* 881 N.E.2d 1095, 1098 (Ind. Ct.App.2008) (quoting *Wright v. State,* 772 N.E.2d 449, 456 (Ind.Ct.App.2002)). Our

Supreme Court also stated many years ago, "The purpose of the law is to protect the public from the annoyances and deleterious effects which may and do occur because of the presence of persons who are in an intoxicated condition." *State v. Sevier*, 117 Ind. 338, 20 N.E. 245, 246–47 (1889).

■■■ At issue in this case is whether Jenkins was in a public place. As this Court recently explained in *Christian v. State*, 897 N.E.2d 503 (Ind.Ct.App., 2008):

"A 'public place' does not mean only a place devoted to the use of the public." *Jones v. State*, 881 N.E.2d 1095, 1097 (Ind.Ct.App.2008) (citing *Wright v. State*, 772 N.E.2d 449, 456 (Ind.Ct.App. 2002)). "It also means a place that 'is in point of fact public, as distinguished from private,—a place that is visited by many persons, and usually accessible to the neighboring public.'" *Id.* "A private residence, including the grounds surrounding it, is not a public place." *Moore v. State*, 634 N.E.2d 825, 827 (Ind.Ct.App.1994).

*Id.* at 504. In *Christian*, this Court reversed the defendant's conviction for public intoxication, concluding that the State failed to prove that she was located in a public place because she was in a driveway/parking area between two residences that was perpendicular to a public street, and the State did not present evidence that the parking area was used by the public in general. *Id.* at 505.

Judge Mathias dissented:

Indeed, if the majority's definition of a public place becomes law, then it is difficult to distinguish why an apartment complex parking lot or common parking area owned by condominium owners would be a "public place." This cannot be the intent of the law or consonant with the well-settled public policy behind the law. *See Jones*, 881 N.E.2d at 1098;

*Sevier*, 117 Ind. at 340, 20 N.E. at 246–47.

*Id.* at 506 (Mathias, J., dissenting).

In *Culp*, the sole case upon which the trial court in this case relied, Culp and Bouse were seated near the top of a stairway leading to the second floor of an apartment house. They were belligerent and appeared intoxicated. They were both arrested and charged with public intoxication. Although Culp and Bouse were convicted of public intoxication, the trial court later granted their motion to correct errors and entered judgments of acquittal. The State appealed. The sole issue on appeal was whether "the enclosed common hallway and stairway area of an apartment house is a 'public place or place of public resort' within the meaning of our public intoxication statute." *Culp*, 433 N.E.2d at 824. This Court acknowledged in certain instances that private property may qualify as a "public place or place of public resort." *Id.* at 825. We explained that a business establishment which impliedly invites consumers to enter upon its premises may be a "public place" within the ambit of the statute. *Id.* Nevertheless, we held that "the weight of authority in Indiana leads to the inexorable conclusion the enclosed common areas of an apartment dwelling are not public areas or places of public resort within the meaning of our public intoxication statute." *Id.* (footnote omitted). The *Culp* Court continued:

The fact a private residence in the instant case has been converted into an apartment house does not render it or its common areas a place of public resort. It is axiomatic in Indiana that a house used for a private residence does not lose its private character merely by the fact a number of people may gather there or have access to it. This applies with equal vigor to multiple unit dwellings. Unlike business enterprises,

members of the public at large are not impliedly invited or encouraged to enter the common areas of an apartment house except when they have personal and private matters to conduct with the tenants. We thus conclude the enclosed hallway and stairway areas of an apartment house are not public places within the context of our public intoxication statute.

*Id.* at 826 (footnote omitted).

We first point out that the issue in *Culp* was whether the common areas *inside* an apartment house qualified as a public place or place of public resort. The *Culp* Court was explicit in limiting the issue to "the enclosed common hallway and stairway area of an apartment house." Here, however, Jenkins was arrested in the outside courtyard area of his apartment complex. Notably, the courtyard was not enclosed by a gate or fence. *See* Tr. p. 24. The videotape confirms this. According to Officer Romeril, the public was free to come and go as they pleased in this area. *Id.* In fact, the area was adjacent to the apartment complex's parking lot. When Jenkins testified at the hearing on his motion to suppress, he acknowledged that the sidewalk he was standing on at the time of his arrest was not unique to his lease and that residents and visitors had access to it. *See id.* at 34–35. In addition, Jenkins testified that visitors at the apartment complex did not have to wear identification. *Id.* at 35. We find that an outside, unenclosed courtyard area of an apartment complex is sufficiently distinguishable from an interior common area of an apartment house such that *Culp* is not controlling.[1] Accordingly, we find that Jenkins was in a public place. As such, the trial court erred in granting his motion to suppress.[2]

Reversed and remanded.

RILEY, J., and DARDEN, J., concur.

---

1. As for Jenkins' argument that there is no "appreciable" difference between being intoxicated in the courtyard of Sutton Place Apartments and being intoxicated in the yard or driveway of a single-family dwelling, which this Court has concluded are not public places, *see Moore v. State*, 634 N.E.2d 825, 827 (Ind.Ct.App.1994), we respond that when a person lives in a multiple-unit dwelling, he shares the common areas with other residents and guests. Perhaps if Jenkins had been on the porch of his apartment, we would have reached a different result.

2. In light of this result, we do not need to address the State's second argument regarding the validity of Jenkins' arrest for resisting law enforcement.