Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**DALE W. ARNETT**
Winchester, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

FILED
May 24 2012, 9:39 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRET BEILER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 38A02-1109-CR-839 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JAY SUPERIOR COURT
The Honorable Max C. Ludy, Jr., Judge
Cause No. 38D01-1011-CM-176

**May 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Bret Beiler ("Beiler") was convicted after a jury trial of public intoxication,[1] a Class B misdemeanor, and resisting law enforcement[2] as a Class A misdemeanor. He appeals raising several issues, which we consolidate and restate as:

I.    Whether sufficient evidence was presented to support his conviction for public intoxication because he contends that he was not in a public place and that there was insufficient evidence to prove intoxication;

II.   Whether the police violated the Fourth Amendment to the United States Constitution by using unreasonable force when arresting Beiler; and

III.  Whether the trial court abused its discretion when it gave Final Instruction 8(A).

We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 17, 2010, at approximately 1:00 a.m., Captain Mike Kreps ("Captain Kreps") and Officer Brad Miller ("Officer Miller") of the Dunkirk City Police Department were on patrol in full uniform and driving an unmarked police vehicle. As they approached the intersection of Lincoln Avenue and Angle Street in Jay County, the officers observed a car parked in front of three mobile homes with its passenger door open. Both Captain Kreps and Officer Miller saw a leg inside the vehicle on the passenger side. The officers were suspicious because of the time of night, the fact that the car door was open, and that only a leg was visible, so they exited their vehicle to investigate.

---

[1] *See* Ind. Code § 7.1-5-1-3.

[2] *See* Ind. Code § 35-44-3-3(a)(1).

The car was parked in a common parking area for the mobile homes. The parking area was located directly in front of three trailers. There were no assigned parking spaces in the parking area, and it was available for use by the residents of the mobile home community and any visitors of the residents. The parking area was open to the public, and anyone visiting the area could park there.

When the officers reached the car, they saw a man, later identified as Beiler, inside the car on the passenger side. Captain Kreps observed that Beiler was slumped over, leaning toward the driver's side, and he could not determine if Beiler was "asleep, awake, alive, or dead." *Tr*. at 34. Captain Kreps shook Beiler to wake him, and when Beiler did wake up, Captain Kreps asked to see his identification. Beiler complied and handed the officer his identification. Both Captain Kreps and Officer Miller could smell the odor of alcohol emanating from Beiler. The officer also saw that Beiler's belt was unbuckled and his pants were unbuttoned with the zipper down. They also noticed a wet spot on the ground outside of the passenger side of the car that smelled like urine.

Captain Kreps asked Beiler why he was in the car, and Beiler replied that Jody, who was his roommate, "had locked him out because he was drunk." *Id*. at 36. Beiler had bloodshot eyes and slurred speech. Because Captain Kreps was concerned about Beiler's medical condition and wanted to determine how intoxicated he was, he asked Beiler to exit the car and submit to a portable breath test ("PBT"). Beiler refused to exit the car and told Captain Kreps that he believed that the officer was going to arrest him for public intoxication. *Id*. at 38. Captain Kreps told Beiler that, at that time, the officers only wanted to check and make sure he was all right, and if so, he could go home. *Id*.

3

Beiler still refused to exit the car and began yelling and screaming at the officers. Because Beiler refused to comply with the officers' verbal commands, Captain Kreps reached into the car, grabbed a hold of Beiler's arm, and attempted to remove Beiler from the car. Beiler tried to shut the door on Captain Kreps's hand, then grabbed onto the center console of the car, and continued to scream profanities at the officers.

Captain Kreps took his taser out and warned Beiler that if he did not exit the vehicle, he would be tased. *Id*. at 69. Beiler continued to refuse to exit, so Captain "drive stunned"[3] him. Beiler still refused to exit the car and "had his foot on the inside of the vehicle and was pushing himself back and was not letting [the officers] get him out of the vehicle." *Id*. at 41. Captain Kreps applied his taser to Beiler a second time, and the officers were able to remove Beiler from the car. Once on the ground outside of the car, Beiler continued to struggle by "kicking all over the place." *Id*. at 42. Beiler also continued to scream profanities at the officers after being removed from the vehicle. The officers were eventually able to handcuff Beiler. Based on their training and experience as police officers, both officers believed that Beiler was intoxicated.

The State charged Beiler with public intoxication as a Class B misdemeanor and resisting law enforcement as a Class A misdemeanor. A jury trial was held, and after the presentation of evidence, the State proposed Final Instruction 8(A), which stated: "A private citizen may not use force or resist arrest by one he knows or has good reason to believe is an authorized officer performing his duties, regardless of whether the arrest is illegal in the circumstances of the occasion." *Appellant's App*. at 150. Beiler objected to

---

[3] Captain Kreps explained that "drive stunned" or "drive tased" means to "take [the taser] and push it onto a person and then . . . activate it." *Tr*. at 59-60.

4

giving the instruction, arguing it was contrary to the resisting arrest statute. *Tr*. at 118-20. The trial court gave the instruction to the jury over the objection of Beiler. At the conclusion of the jury trial, Beiler was found guilty as charged. The trial court sentenced him to six months executed for his public intoxication conviction and one year executed for his resisting law enforcement conviction, with the sentences to be served concurrently. Beiler now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Sufficient Evidence

Our standard of review for sufficiency claims is well-settled. When we review a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Parahams v. State*, 908 N.E.2d 689, 691 (Ind. Ct. App. 2009) (citing *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003)). We look only to the probative evidence supporting the judgment and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id*. If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id*. It is the function of the trier of fact to resolve conflicts of testimony and to determine the weight of the evidence and the credibility of the witnesses. *Yowler v. State*, 894 N.E.2d 1000, 1002 (Ind. Ct. App. 2008).

Beiler argues that the State failed to present sufficient evidence to support his conviction for public intoxication. In order to convict Beiler of public intoxication, the State was required to prove beyond a reasonable doubt that Beiler was in a public place

5

or a place of public resort in a state of intoxication caused by his use of alcohol or a controlled substance. Ind. Code § 7.1-5-1-3.

### A. Public Place

Beiler contends that he was not in a public place when the officers observed and approached him, and he should not have been arrested or convicted of public intoxication. He asserts that the parking area where he was located when the officers observed him was private property and not a public place because the parking area was for residents and their invitees. Beiler therefore argues that the State failed to prove his conviction for public intoxication.

"A 'public place' does not mean only a place devoted to the use of the public." *Jones v. State,* 881 N.E.2d 1095, 1097 (Ind. Ct. App. 2008) (citing *Wright v. State,* 772 N.E.2d 449, 456 (Ind. Ct. App. 2002)). "It also means a place that 'is in point of fact public, as distinguished from private,—a place that is visited by many persons, and usually accessible to the neighboring public.'" *Id.* We have also deemed the term to include a place open to common and general use, participation and enjoyment; a place accessible to the public. *Wright*, 772 N.E.2d at 455. "A private residence, including the grounds surrounding it, is not a public place." *Christian v. State*, 897 N.E.2d 503, 504-05 (Ind. Ct. App. 2008) (citing *Moore v. State,* 634 N.E.2d 825, 827 (Ind. Ct. App. 1994)), *trans. denied* (2009).

In support of his argument, Beiler cites to three cases where this court reversed convictions for public intoxication. In *Christian v. State*, this court reversed the defendant's conviction for public intoxication, concluding that the State failed to prove

that she was located in a public place because she was in a driveway/parking area between two residences that was perpendicular to a public street, and the State did not present evidence that the parking area was used by the public in general. 897 N.E.2d at 505. Similarly, in *Jones v. State*, we reversed a defendant's conviction for public intoxication where she was sitting in a vehicle parked in a driveway behind a vacant house, next to an alley. 881 N.E.2d at 1097-98. We concluded that she was sitting in a vehicle parked on private property. *Id.* at 1098. Finally, in *Moore v. State*, the defendant was arrested in his ex-wife's driveway, and we reversed his conviction, concluding that the defendant was not in a public place. 634 N.E.2d at 826-27.

Based on this court's more recent decision in *State v. Jenkins*, 898 N.E.2d 484 (Ind. Ct. App. 2008), *trans. denied* (2009), we find these cases cited by Beiler to be distinguishable. In *Christian*, the area where the defendant was arrested was the driveway of a friend, and "the State presented no evidence that the parking area was used by the public in general rather than only the residences next to the area." 897 N.E.2d at 505. *Jones* also dealt with a driveway, and the arresting officer in that case "considered the driveway to be private property." 881 N.E.2d at 1097. In *Moore*, the parking area was the defendant's ex-wife's driveway, and the State conceded that the driveway was not a public place. 634 N.E.2d at 826. In *Jenkins*, the area at issue was the outdoor courtyard of an apartment building, and a panel of this court focused on whether the area was accessible to only one tenant or was a common area. 898 N.E.2d at 488. The panel concluded that the courtyard was a public place because a police officer testified that "the public was free to come and go as they pleased in this area," and the defendant stated that

7

"residents and visitors had access to it." *Id*.

In the present case, the parking area was not a clearly defined driveway as in the cases cited by Beiler. The State presented the testimony of Captain Kreps, who stated that the parking lot was a common parking area for all of the mobile homes. *Tr*. at 33. Lisa Curtis, who lived in one of the mobile homes, confirmed that the parking area was open to the public. *Id*. at 83. She agreed that the parking area was similar to "off the street" parking and that "anybody that pulls up and anybody that lives there, any visitors, anybody can just pull in there, it's not like it is off limits to people." *Id*. at 84. Therefore, the evidence presented showed that the parking area was open for common use among the public and the residents of the mobile home community and was a public place.

*B. Intoxication*

Beiler next argues that the State failed to present sufficient evidence to prove that he was intoxicated when the officers discovered him. Intoxicated is defined as being under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86. Proof of intoxication may be established by showing impairment, and it does not require proof of blood alcohol content. *Gatewood v. State*, 921 N.E.2d 45, 48 (Ind. Ct. App. 2010) (citing *Ballinger v. State*, 717 N.E.2d 939, 943 (Ind. Ct. App. 1999)), *trans. denied* (2010). "Evidence of impairment may include: '(1) the consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; [and] (7) slurred speech.'" *Id*. (quoting *Ballinger*, 717 N.E.2d at 943).

8

Here, the evidence showed that, when the officers first observed Beiler, he was passed out in the car in a way that Captain Kreps could not determine whether Beiler was "asleep, awake, alive, or dead." *Tr*. at 34. Both Captain Kreps and Officer Miller smelled the odor of alcohol on Beiler when they approached him. Beiler had bloodshot eyes and slurred his speech. Captain Kreps and Officer Miller both observed that Beiler's belt was unbuckled and his pants were unbuttoned and unzipped and that there was a wet spot outside of the car that smelled of urine. Beiler told the officers he was in the car because his roommate "had locked him out because he was drunk." *Id*. at 36. Both of the offices testified that they believed that Beiler was intoxicated based upon their training and experience as police officers. *Id*. at 43, 70. We conclude that sufficient evidence was presented to show that Beiler was intoxicated. His arguments are merely requests to reweigh the evidence and judge the credibility of the witnesses, which we cannot do on review. *Parahams*, 908 N.E.2d at 691. Sufficient evidence was presented to support Beiler's conviction for public intoxication.

## II. Unreasonable Force

Beiler argues that Captain Kreps used unreasonable force against Beiler, contrary to the Fourth Amendment, which gave him the right to reasonably resist. Generally, an issue not raised at trial cannot be addressed on appeal unless the defendant claims fundamental error occurred. *Curtis v. State*, 948 N.E.2d 1143, 1148 (Ind. 2011). Here, Beiler contends that the issue "was raised when [defense counsel] asked Captain Kreps '[d]oesn't it seem like you're kind of done at that point,'" referring to the time period after the officer had awoken Beiler. *Tr*. at 49. This question was in response to Captain Kreps

testimony that he realized that Beiler was not attempting to steal anything from the car since he had to wake up Beiler. At this point in the cross-examination, defense counsel did not elicit any testimony from Captain Kreps as to whether the officer touched Beiler or caused Beiler any harm.

In defense counsel's closing argument, he did not argue that the officers violated any of Beiler's Fourth Amendment rights or that the force used by the officers was unreasonable. Instead, he discussed the fact that the officers did not verbally identify themselves, a theory that Beiler was in a deep sleep when he was approached by the officers, and a theory that Beiler acted in self-defense because he believed he was being attacked by unknown assailants. *Id*. at 144-50. Although Beiler's claimed injuries were referred to, it was in the context of whether it was reasonable for the officers not to allow Beiler to sleep in his car. *Id*. at 148. Because Beiler did not raise the unreasonable force claim at trial, the issue is waived on appeal. *Curtis*, 948 N.E.2d at 1148

Waiver notwithstanding, we believe that the officers' use of force was reasonable and that Beiler did not have the privilege to resist. Claims that law enforcement officers have used excessive force in the course of an arrest of a free citizen are analyzed under the Fourth Amendment to the United States Constitution and its "reasonableness" standard. *Shoultz v. State*, 735 N.E.2d 818, 823-24 (Ind. Ct. App. 2000) (citing *Graham v. Connor,* 490 U.S. 386, 395 (1989)), *trans. denied* (2001). "Because the Fourth Amendment test of reasonableness is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect

10

poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* However, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id*.

Beiler agrees that the officers were justified in stopping and investigating possible criminal activity upon seeing a person in a parked car with the door open at 1:00 a.m. He asserts, however, that when they determined that Beiler was merely sleeping in the car and that he lived at the address, their investigation was complete, and they should have left. He contends that he was not required to exit the car to take the PBT because he was on his own property and not committing any crime. Therefore, Beiler asserts that it was not objectively reasonable to tase someone for not exiting a vehicle and taking a PBT when that person was parked on private property and had previously cooperated and identified himself.

A law enforcement officer is justified in using reasonable force if the officer reasonably believes that the force is necessary to effect a lawful arrest. Ind. Code § 35-41-3-3(b). "'A private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful.'" *Shoultz*, 735 N.E.2d

at 823 (quoting *Casselman v. State,* 472 N.E.2d 1310, 1315 (Ind. Ct. App. 1985)). Our Supreme Court has found that it is "unwise to allow a homeowner to adjudge the legality of police conduct in the heat of the moment" and that "allowing resistance unnecessarily escalates the level of violence and therefore the risk of injuries to all parties involved without preventing the arrest." *Barnes v. State*, 946 N.E.2d 572, 576 (Ind. 2011), *clarified on reh'g,* 953 N.E.2d 473 (Ind. 2011).

In the present case, the officers approached Beiler, who they had observed sleeping in the front seat of a car parked in a public place. Once they had awoken him, the officers noticed that Beiler smelled of alcohol, had bloodshot eyes and slurred speech, and that his belt was unbuckled and pants undone with a wet spot outside the car that smelled of urine. Beiler also stated that his roommate had locked him out because he was drunk. Prior to using any force, Captain Kreps verbally ordered Beiler to exit the car. Beiler refused and responded by yelling and cursing at the officers. Captain Kreps then attempted to remove Beiler from the car by grabbing his arm and trying to pull him out. Beiler gripped the center console to keep the officer from pulling him out of the car and tried to close the door on Captain Kreps's hand, while continuing to curse at the officers. At that time, Captain Kreps removed his taser from the holster and used it on Beiler. Beiler continued to physically resist the officers by putting his foot on the inside of the car and pushing himself back inside. Captain Kreps used the taser on Beiler a second time, and the officers were able to remove him from the car, but Beiler persisted in physically resisting by "kicking all over the place" and "squirming around trying to get away." *Tr*. at 42, 69. The officers were finally able to handcuff Beiler. We conclude

12

that the officers' use of force was reasonable due to Beiler's increased aggression toward them and his refusal to comply with their requests.

### III.  Final Jury Instruction 8(A)

The manner of instructing the jury lies largely within the sound discretion of the trial court, and we review the trial court's decision only for abuse of that discretion.  *Orta v. State*, 940 N.E.2d 370, 376 (Ind. Ct. App. 2011) (citing *Cline v. State,* 726 N.E.2d 1249, 1256 (Ind. 2000)), *trans. denied*.  In reviewing a trial court's decision to give tendered jury instructions, we consider:  (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given.  *Spivey v. State*, 922 N.E.2d 91, 93 (Ind. Ct. App. 2010).  Jury instructions are to be considered as a whole, and we will not find that the trial court abused its discretion unless we determine that the instructions taken as a whole misstate the law or otherwise mislead the jury.  *Fuentes v. State*, 952 N.E.2d 275, 278 (Ind. Ct. App. 2011), *trans. denied*.  We will reverse a conviction only if the appellant demonstrates that the instructional error prejudices his substantial rights.  *Treadway v. State*, 924 N.E.2d 621, 636 (Ind. 2010).

Beiler argues that the trial court abused its discretion when it gave the State's tendered Final Instruction 8(A).  He contends that the instruction was "inappropriate under the circumstances and facts elicited in the case as it didn't allow for resistance to excessive force."  *Appellant's Br*. at 12.  Beiler claims that Final Instruction 8(A) confused the jury as to the law on the facts elicited at trial because the instruction does

13

not allow for a person to resist excessive force in any manner and is "squarely opposite to the rule of allowing an arrestee to use reasonable force to protect himself from excessive force and great bodily harm." *Id*. at 13.

During trial, the State tendered Final Instruction 8(A), which stated: "A private citizen may not use force or resist arrest by one he knows or has good reason to believe is an authorized officer performing his duties, regardless of whether the arrest is illegal in the circumstances of the occasion." *Appellant's App*. at 150. Beiler objected to giving the instruction, arguing it was contrary to the resisting arrest statute. *Tr*. at 118-20. The trial court gave the instruction to the jury over the objection of Beiler.

"At common law, a person was privileged to resist an unlawful arrest." *State v. Richardson*, 927 N.E.2d 379, 384 (Ind. 2010) (citing *Gross v. State,* 186 Ind. 581, 583, 117 N.E. 562, 564 (1917)). "Our courts, however, have uniformly accepted that this common law rule is outmoded in today's modern society." *Id*.; s*ee Fields v. State,* 178 Ind. App. 350, 355, 382 N.E.2d 972, 975 (1978) (holding that private citizen may not use force or resist peaceful arrest by one he knows or has good reason to believe is authorized officer performing his duties, regardless of whether arrest is legal or illegal). "The general rule in Indiana is that 'a private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful.'" *Shoultz*, 735 N.E.2d at 823 (quoting *Casselman,* 472 N.E.2d at 1315). Therefore, Final Instruction 8(A) correctly stated the law.

At trial, Beiler attempted to portray his arrest by the officers as being unlawful.

When he testified, he characterized the officers' actions as "like an ambush. That was exactly what it was." *Tr*. at 106. He testified that, after falling asleep in the car, he did not wake up until someone, who was later identified as Captain Kreps, was "ripping" him out of the car. *Id*. at 104. When the trial court overruled Beiler's objection to Final Instruction 8(A), it made the following statement:

> But when I recall, my recollection of voir dire in the discussion of the case of the police entering the house and the privacy of the automobile and Mr. Beiler's own testimony about how he felt that this whole and even [defense counsel's] comment about, let's see what was it, "cowboy police officers" that we ordered stricken, still that gives me some indication of what might be argued in final summation.

*Id*. at 122-23. The evidence in the record supported giving Final Instruction 8(A).

Beiler argues that Final Instruction 8(A) caused confusion by not including the word "lawfully" when discussing an officer performing his or her duties. When reviewing jury instructions, this court considers all jury instructions as a whole. *Fuentes*, 952 N.E.2d at 278. Final Instruction 8, which was given at trial, stated in pertinent part: "A person who knowingly or intentionally forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officers *while the officer is lawfully engaged in the execution of his duties as an officer* commits resisting law enforcement, a Class A misdemeanor." *Appellant's App*. at 149. Final Instruction 8 informed the jury that the officer must be lawfully engaged in the execution of his or her duties, and therefore no confusion was caused by giving Final Instruction 8(A). We conclude that the trial court did not abuse its discretion in giving the jury Final Instruction 8(A).

Affirmed.

BARNES, J., and BRADFORD, J., concur.