Robert **FUENTES**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A05–1011–CR–717.

Court of Appeals of Indiana.

July 26, 2011.

Transfer Denied Oct. 19, 2011.

Marce Gonzalez, Jr., Dyer, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Andrew R. Falk, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant Robert Fuentes appeals from his conviction for Murder, a felony.[1] Fuentes contends that the trial court abused its discretion in instructing the jury, thereby depriving him of the opportunity to present his self-defense claim. We affirm.

### FACTS AND PROCEDURAL HISTORY

Shortly before 8:45 p.m. on November 1, 2008, Latanza McFerrin drove her fiancé Ronald Grayson, who stood 5′11″ tall and weighed 233 pounds, to a Clark gas station in Lake County. Once there, Grayson went inside so that he could buy a pack of cigarettes. Back outside, Grayson was conversing with his friend Thomas Meadows as the duo stood in front of Grayson's vehicle. About this time, Fuentes, who stood 5′4″ tall and weighed approximately 140 pounds, arrived in a burgundy Impala.

Inside the gas station, Fuentes collided with Meadows and exchanged words and a handshake with him. According to Fuentes, he approached the counter to pay for gasoline when Grayson said something to him that he perceived to be unfriendly. Fuentes testified that he felt Meadows and Grayson were attempting to "instigate" something, he felt threatened, he thought it would be best just to leave, and he left

---

1. Ind.Code § 35–42–1–1 (2008).

the gas station without paying for his gasoline. Tr. p. 273. Fuentes testified that, based on what Grayson said to him, he felt that he "was gonna get f* * * * * up or I had to get out of there someway [sic], somehow." Tr. p. 278.

Fuentes walked to the parking lot, followed by Grayson, who "came directly at [him] reaching behind his back—behind his shirt, rather." Tr. p. 276. At 8:45:10 p.m., surveillance video shows Fuentes attempting to punch Grayson, a blow that did not land. Grayson backed up and then moved toward Fuentes, who had by this time drawn his illegally-possessed handgun. At 8:45:11 p.m., Fuentes shot Grayson in the left arm. Within two seconds, Grayson went to his knees in the parking lot and raised his arms and hands in front of him. Despite Grayson's now defenseless position, Fuentes shot him again, this time in the chest, killing him.

On October 24, 2008, the State charged Fuentes with murder and Class C felony carrying a handgun without a license. At trial, Fuentes tendered the following instruction regarding self-defense:

> It is an issue whether the accused acted in self-defense[.]
>
> A person may use reasonable force against another person to protect himself from what the accused reasonably believes from his perspective to be the imminent use of unlawful force.
>
> A person is justified in using deadly force only if he/she reasonably believes that deadly force is necessary to prevent serious bodily injury to himself.
>
> No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.
>
> However, a person may not use force if:

> he/she is committing a crime *that directly and immediately produced the confrontation where the force was used.*
>
> he/she provokes a fight with another person with intent to cause bodily injury to that person
>
> he/she has willingly entered into a fight with another person or started the fight, unless he withdraws from the fight and communicates to the other person his intent to withdraw and the other person nevertheless continues or threatens to continue the fight.
>
> The State has the burden of proving beyond a reasonable doubt that the accused did not act in self-defense.

Appellant's App. p. 79 (brackets and emphasis in original removed; brackets and emphasis in above supplied).

The trial court did not give the tendered instruction, instead giving final instructions that largely tracked the relevant statutory language regarding self-defense. *Inter alia,* the trial court instructed the jury as follows:

> It is an issue whether the defendant acted in self-defense.
>
> A person may use reasonable force against another person to protect himself form what he reasonably believes to be the imminent use of unlawful force.
>
> A person is justified in using deadly force and does not have a duty to retreat only if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself or a third person or to prevent the commission of a felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.
>
> *However, a person may not use force if he is committing a crime* or escaping

after the commission of a crime; he provokes a fight with another person, with intent to cause bodily injury to that person; or he has entered into a fight with another person or started the fight, unless he withdraws from the fight and communicates to the other person his intent to withdraw and the other person nevertheless continues or threatens to continue the fight.

The State has the burden of disproving the defense of self-defense beyond a reasonable doubt. Before you may find the defendant guilty of the crime charged, you must find beyond a reasonable doubt that the defendant was not acting in self-defense.

Appellant's App. p. 110 (emphasis supplied).

On October 14, 2010, following a bifurcated trial, Fuentes was found guilty as charged. On November 12, 2010, the trial court sentenced Fuentes to fifty-eight years of incarceration for murder and five years for carrying a handgun without a license, both sentences to be served consecutively.

## DISCUSSION AND DECISION

### Whether the Trial Court Abused its Discretion in Instructing the Jury

Fuentes contends that the trial court abused its discretion in instructing the jury regarding the law of self-defense.[2] "Instructing the jury lies solely within the discretion of the trial court, and we will reverse only upon an abuse of that discretion." *Schmid v. State,* 804 N.E.2d 174, 182 (Ind.Ct.App.2004), *trans. denied.* A defendant is entitled to have the jury instructed correctly on an essential rule of law. *McCarthy v. State,* 751 N.E.2d 753,

755 (Ind.Ct.App.2001), *trans. denied.* "Generally, we will reverse a trial court for failure to give a tendered instruction if: 1) the instruction is a correct statement of the law; 2) it is supported by the evidence; 3) it does not repeat material adequately covered by other instructions; and 4) the substantial rights of the tendering party would be prejudiced by failure to give it." *Creager v. State,* 737 N.E.2d 771, 776 (Ind. Ct.App.2000). Jury instructions are to be considered as a whole, and we will not find that the trial court abused its discretion unless we determine that the instructions taken as a whole misstate the law or otherwise mislead the jury. *Schmid,* 804 N.E.2d at 182.

Fuentes's sole defense at trial was that he acted in self-defense when he shot and killed Grayson. Indiana Code section 35–41–3–2 provides, in relevant part, that "a person is not justified in using force [in self-defense] if ... the person is committing or is escaping after the commission of a crime[.]" Ind.Code § 35–41–3–2(e)(1) (2008). As previously mentioned, the trial court's instruction largely tracked this statutory language, informing the jury that "a person may not use force if he is committing a crime[.]" Appellant's App. p. 110. To the extent that it tracks the language of the statute, the trial court's instruction on this point was correct. Fuentes argues, however, that the instruction was incomplete.

As the Indiana Supreme Court has held, the simple fact that a defendant is committing a crime at the time he is allegedly defending himself

is not sufficient standing alone to deprive the defendant of the defense of self-defense. Rather, there must be an immediate causal connection between

---

**2.** This claim relates only to Fuentes's murder conviction, and he does not otherwise challenge his carrying a handgun without a license conviction.

the crime and the confrontation. Stated differently, the evidence must show that but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred.

*Mayes v. State,* 744 N.E.2d 390, 394 (Ind. 2001).

Here, we are compelled to conclude that the jury was not properly instructed on the law of self-defense. Although the trial court's final instructions regarding self-defense were correct as far as they went, they were, pursuant to the Indiana Supreme Court's holding in *Mayes,* incomplete. This omission of the judicial gloss on the statutory language effectively deprived Fuentes of his only defense. Based on the trial court's instructions, the jury, if it found that Fuentes's handgun possession was illegal, was not only permitted but *required* to ignore his claim of self-defense entirely. Even if the jury believed that Fuentes acted reasonably in shooting Grayson, the trial court's instructions simply did not permit it to find that he acted in self-defense if it found that he committed carrying a handgun without a permit. The law, as established in *Mayes,* does not permit this result. *See Smith v. State,* 777 N.E.2d 32, 37 (Ind.Ct.App.2002) (in case where defendant was committing marijuana possession at time of confrontation, concluding that rejection of instruction similar to the one tendered here was reversible error and noting that "[t]he instructions given, taken literally, deprived Smith of his defense"), *trans. denied.* Fuentes's tendered instruction on self-defense is an accurate and, more importantly, complete statement of the law, which the record supported giving and which was not covered by other instructions, and we therefore conclude that it was error to refuse to give it.

The State contends that the instructions given here were proper, citing to *Mayes,* where the Court found similar instructions to be proper. *Id.* at 394–95. In *Mayes,* the Court concluded that the self-defense instructions were not erroneous because the record contained evidence from which the jury could have concluded that a causal connection existed between the defendant's illegal handgun possession and the confrontation which led to the victim's death. *Id.* at 394. Here, however, there is no evidence whatsoever that Fuentes's illegal handgun possession caused the confrontation that culminated in Grayson's death. Indeed, there is no evidence that either Grayson or Meadows was even aware that Fuentes was armed before he drew his weapon, which occurred after the confrontation began. The Court's holding in *Mayes* does not help the State in this case.

■■ Finally, the State contends that any instructional error that may have occurred was harmless because Fuentes shot Grayson twice. "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Dill v. State,* 741 N.E.2d 1230, 1233 (Ind.2001). "When danger of death or great bodily harm ceases, the right of self-defense ceases with it." *Schlegel v. State,* 238 Ind. 374, 383, 150 N.E.2d 563, 567 (1958). For this reason, evidence of shooting following incapacitation of the victim has been found to undercut a claim of self-defense. In *Mayes,* for example, the majority, along with the two Justices who concurred in the result, agreed that "Mayes also is entitled to no relief on this claim for an additional reason. The record shows Mayes fired five shots at [the victim], and at least one bullet struck her in the back as [she] was either falling down or already on the ground. Firing multiple shots undercuts a

claim of self-defense." *Mayes*, 744 N.E.2d at 395 n. 2; *id.* at 396 (Boehm, J., concurring in result with Dickson, J., concurring) ("I agree that the conviction should be affirmed for the reasons given by the majority in footnote two of its opinion.").

■ Any instructional error that occurred here was harmless, as we conclude that the jury could not have properly found that Fuentes acted in self-defense when he shot Grayson a second time. After the first shot, Grayson went to his knees and put his arms and hands up in a defenseless position. Any threat Grayson had posed to Fuentes had been neutralized, and Fuentes's right to self-defense therefore ceased. Instead of seeking to disengage at that point, Fuentes stood his ground, kept his weapon trained on Grayson, hesitated a moment, and shot him again. Under the facts of this case, Fuentes's second shot at Grayson fatally undercuts his claim of self-defense. Any error the trial court committed in instructing the jury was therefore harmless.

We affirm the judgment of the trial court.

BAKER, J., and MAY, J., concur.