**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 09 2013, 6:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANTHONY C. LAWRENCE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY COOK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A05-1211-CR-608 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Dennis D. Carroll, Judge
Cause No. 48C06-1112-MR-2403

**October 9, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Unfortunately, violence often does not end when offenders are incarcerated. This is especially true when the imprisoned offenders are gang members who have retained their gang affiliations.

Here, after an attack between two rival gangs in one state prison, rumors of the fight spread to associate gang members at another state prison, which lead to an attack on a high-ranking gang member at that prison. However, this attack only escalated the violence between the rival gangs insofar as the gang who had attacked the high-ranking gang member believed that they needed to attack again before the rival gang could retaliate.

Appellant-defendant Jeffrey Cook and Jerry Clemons devised a plan where they would attack Danny Dewitt, a rival gang member, when they were released for recreation time. Cook and Clemons waited for Dewitt and stabbed him to death.

Cook was charged with Murder,[1] a felony; Prisoner in Possession of a Dangerous Device or Material,[2] a class B felony; Criminal Gang Activity,[3] a class D felony; and a Criminal Gang Sentence Enhancement.[4] Cook took the stand and alleged self-defense. He was convicted of all charges except the gang-related sentencing enhancement was not

---

[1] Ind. Code § 35-42-1-1.

[2] Ind. Code § 35-44-3-9.5 (recodified at Ind. Code § 35-44.1-3-7, effective July 1, 2012).

[3] Ind. Code § 35-45-9-3.

[4] Ind. Code § 35-50-2-15.

imposed, and he was sentenced to a seventy-year term. Cook appeals arguing that the trial court erred by not giving his proffered instruction on self-defense.

We conclude that the trial court did not err by refusing to give Cook's proffered jury instruction because the evidence did not support the trial court giving the instruction. Consequently, we affirm the judgment of the trial court.

FACTS

In July 2011, Cook, Clemons, and Dewitt were inmates at the Pendleton Correctional Facility. Cook and Clemons were members of the Maniac Latin Disciples (MLD), a criminal gang. Dewitt was a member of the Aryan Brotherhood (AB), a rival gang.

On July 15, 2011, MLD members fought with AB members at the Indiana State Prison in Michigan City. Clemons received a call at Pendleton informing him of the fight. That evening, at Pendleton, MLD members attacked "Big Mike," a high-ranking AB member, in his cell. Tr. p. 179. Apparently, MLD was not finished because Clemons sent Cook a "kite" – a prison letter – to carry out an attack on Dewitt. Id. at 184. Clemons told Cook that AB members knew that MLD members had attacked Big Mike and that Clemons and Cook needed to "make the first move" on the AB members before they could retaliate. Id. Clemons instructed Cook to hit or stab Dewitt in the neck and that Clemons would use a shank to stab Dewitt in the chest. In preparation for the confrontation with Dewitt, Cook and Clemons constructed body armor out of layered newspaper and cloth.

3

On July 16, 2011, around 6:30 a.m., prison officers released the inmates to the gym for recreation. Cook and Clemons, who were wearing body armor, walked in the vicinity of Dewitt towards the gym. Cook waited at the bottom of a flight of stairs as Clemons and Dewitt descended. When Dewitt and Clemons reached the bottom of the stairs, Cook and Clemons began stabbing Dewitt. Prison officers rushed to the scene as Cook and Clemons fled but not before prison officers saw Cook running with a shank in his hands that he dropped during his flight.

Prison officers apprehended Cook and Clemons and recovered their shanks. Cook yelled, "I got you, b*tch," when the officers apprehended him. Tr. p. 260, 265. Dewitt eventually died as a result of his injuries. The autopsy revealed that Dewitt sustained twenty-three stab wounds that were caused by one flat object and one oval object. The wounds inflicted by the flat object were fatal.

Prison officers searched the cells belonging to Cook and Clemons. From Cook's cell, the officers recovered Clemons's letter to Cook discussing an attack on Dewitt. The officers also recovered a cap and a mug with gang writing and handwritten pages describing gang-related events.

On December 28, 2011, the State charged Cook with Count I, murder, a felony; and Count II, prisoner in possession of a dangerous device or material, a class B felony. On January 26, 2012, the State amended the information and added Count III, criminal gang activity, a class D felony. On February 28 and March 2, 2012, the State again amended the information to add a criminal gang sentence enhancement.

4

At trial, Clemons testified and confessed to murdering Dewitt. Clemons also admitted that he sent the letter discussing the attack on Dewitt found in Cook's prison cell, which the State introduced into evidence. The State also introduced photographs of Cook, Clemons, and Dewitt, all of whom had numerous gang-related tattoos.

Camees Barnett, an inmate at Pendleton, testified that he saw Cook waiting for Clemons and Dewitt to come down the stairs before the attack. Officer Lucas Hamm, who witnessed the attack, testified that Dewitt was unarmed when Cook and Clemons attacked him.

Officer Walt Peterson testified about MLD and AB, the gang-related tattoos displayed by Cook, Clemons, and Dewitt, and the gang-related fights that had occurred in Michigan City and Pendleton on July 15 and 16, 2011. Officer Peterson testified that an inmate who feared for his or her life may ask to be put into protective custody.

Cook took the stand in his own defense, offering an alternate version of events. Cook admitted that he was a member of MLD and that he knew Dewitt was an AB member. Cook testified that he did not know Dewitt personally and claimed that Dewitt's gang superiors sent a kite to Dewitt asking him to attack Cook and Clemons during recreation. Cook stated that Clemons intercepted the kite. Cook also claimed that Dewitt was armed, while he was unarmed, and that Dewitt threw hot coffee on him. Cook alleged that he managed to take Dewitt's shank from him during the altercation. Cook admitted that Clemons had instructed him to kill Dewitt but claimed that it was "his thought not mine." Tr. p. 434.

5

During the State's rebuttal, Officer Tom Francum, testified that prison officers did not recover any kites during the search of Clemons's prison cell. Officer Francum also testified that he did not see any spilled coffee at the scene of the attack.

During the final instructions conference, Cook proffered the following instruction, which is referred to as Part III of the self-defense instruction:

> The Indiana Statute on self-defense provides that "a person is not justified in using force if: he is committing . . . a crime." In some instances; a contemporaneous crime may not automatically negate a claim of self-defense. Stated differently, "because a defendant is committing a crime at the time he is allegedly defending himself is not sufficient, standing alone, to deprive the defendant of the defense of self-defense. Rather, there must be an immediate causal connection between the crime and the confrontation . . . the evidence must show that but for the defendant committing a crime, the confrontation resulting in (injury) to the victim would not have occurred."

Appellant's App. p. 226.

After the parties discussed the proffered instruction, the trial court concluded that it would probably confuse the jury more than it would help it because it was not applicable under these facts. Accordingly, the trial court instructed the jury on self-defense as follows:

SELF DEFENSE – PART I

> The defense of self-defense is defined by law as follows:

> A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that the force is necessary to prevent serious bodily injury to himself or a third person, or the commission of a forcible felony. No person in this state shall be placed

6

in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.

A person is not justified in using force if:

1. He is committing or escaping after the commission of a crime.
2. He provokes unlawful action by another person with intent to cause bodily injury to the other person; or
3. He has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so, and the other person nevertheless continues or threatens to continue unlawful action.

The State has the burden of disproving this defense beyond a reasonable doubt.

## SELF DEFENSE – PART II

A defendant may use deadly force to repeal an attack only if such force is reasonable and believed to be necessary. Indeed, the trier of fact is not precluded from finding that a defendant used unreasonable force, even though the victim may have been the initial aggressor.

When a defendant asserts self-defense, the burden shifts to the State to disprove one of the elements of self-defense beyond a reasonable doubt. The State may carry its burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief.

## SELF-DEFENSE:  REASONABLENESS

When a defendant asserts that he was acting in self-defense, the jury must assess the reasonableness of the Defendant's actions in defending himself in light of the circumstances as they appeared from the subjective standpoint of the defendant at the time.

Appellant's App. p. 169, 171-72.

On October 5, 2012, following a three-day trial, the jury found Cook guilty on all counts except it declined to impose the criminal gang sentence enhancement. On

7

November 13, 2012, the trial court held a sentencing hearing during which it sentenced Cook to sixty years on Count I to be served consecutively to the ten-year sentence imposed on Count II, but concurrently to the three-year sentence imposed on Count III, for an aggregate sentence of seventy years. Cook now appeals.

DISCUSSION AND DECISION

Cook argues that the trial court erred by not giving his proffered instruction. More particularly, Cook maintains that by failing to give the jury his proffered instruction, he was deprived of the ability to have the jury decide whether there was a causal connection between the crime he committed and his need to utilize self-defense.[5]

The trial court has broad discretion in instructing the jury, and we will reverse only for an abuse of that discretion. Mayes v State, 744 N.E.2d 390, 394 (Ind. 2001). When determining whether the trial court erred in refusing the defendant's tendered instruction, this Court will look to whether: (1) the tendered instruction correctly states the law; (2) there is evidence in the record to support the giving of the instruction; (3) the substance of the tendered instruction is not covered by other instructions; and (4) the substantial rights of the tendering party would be prejudiced by failing to give it. Fuentes v. State, 952 N.E.2d 275, 278 (Ind. Ct. App. 2011), trans. denied.

---

[5] We observe that Cook's use of approximately five pages of quoted colloquy between the trial court and the attorneys in the argument section of the brief, is not particularly helpful, and we discourage it in the future. See Ind. Appellate Rule 46(A)(8)(stating that "the argument must include a brief statement of the procedural and substantive facts necessary for consideration of the issues presented on appeal") (emphasis added).

Here, it is undisputed that Cook was a member of MLD because he admitted to being a member of the gang at trial and had the name of the gang and its symbols tattooed on his face and forehead. Tr. p. 430; Ex. 26. Cook also admitted that he did not know Dewitt personally, but knew that he was an AB member. Tr. p. 408. Thus, there was an immediate causal connection between the crime and the confrontation or, in other words, between Cook's MLD membership and the fight with Dewitt. Although whether an immediate causal connection existed is generally a question of fact, in this case, it is undisputed that the confrontation resulting in Dewitt's death stemmed from Cook's criminal act of being in a gang.

Furthermore, as the trial court explained, the tendered jury instruction was likely to confuse the jury because although there are situations where the charged crime has no causal connection to the confrontation necessitating the use of self-defense, those were not the circumstances in the instant case. By either side's version of the events, Cook's confrontation with Dewitt would not have occurred had it not been for Cook's gang membership. Therefore, the evidence in the record does not support giving the instruction.

Even assuming solely for argument's sake that the trial court erred by not giving Cook's tendered instruction, the error is harmless, inasmuch as the State presented sufficient evidence that would allow a reasonable jury to reject Cook's claim of self-defense. See Dill v. State, 741 N.E.2d 1230, 1233 (Ind. 2001) (stating that "[e]rrors in

9

the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise").

More particularly, the evidence established that Cook and his co-conspirator planned an attack on Dewitt. Cook waited on Dewitt and then stabbed him twenty-three times. Tr. p. 193-94, 236-37, 245. The victim was unarmed and defenseless. Even accepting Cook's version of events, he was a willing participant in the fight, did not seek protective custody, and wore body armor to a gang fight. Id. at 395-96, 436. Cook's status as a willing participant negates his claim of self-defense. Wilson v. State, 770 N.E.2d 799, 800-01 (Ind. 2002).

Further, there is no prejudice because the trial court's instructions did not foreclose the jury from considering the merits of Cook's self-defense claim. See Henderson v. State, 795 N.E.2d 479, 482 (Ind. Ct. App. 2004) (finding no prejudice where the jury considered the merits of defendant's self-defense claim notwithstanding incomplete jury instructions on self-defense). In this case, the jury specifically found that Cook was a member of MLD but did not kill Dewitt at the direction of MLD. Appellant's App. p. 193, 201, 207. Put another way, the jury rejected Cook's self-defense claim because his actions were unreasonable, rather than because he was a member of a gang. Consequently, even assuming that the trial court erred by failing to give Cook's proffered instruction, Cook has failed to show prejudice, and this argument fails.

10

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.