## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 17 2016, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott King
Russell W. Brown, Jr.
Scott King Group
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Fuentes, *Appellant-Defendant,* | March 17, 2016 |
| v. | Court of Appeals Case No. 45A03-1506-PC-618 |
| | Appeal from the Lake Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Salvador Vazquez, Judge |
| | The Honorable Kathleen A. Sullivan, Magistrate |
| | Trial Court Cause No. 45G01-1205-PC-8 |

**Bailey, Judge.**

# Case Summary

Appellant-Petitioner Robert Fuentes ("Fuentes") appeals the denial of his petition for post-conviction relief, following his convictions for Murder and Carrying a Handgun Without a License. We affirm.

# Issues

Fuentes presents two issues for review:

    I.    Whether he was denied the effective assistance of trial counsel; and

    II.    Whether he was denied the effective assistance of appellate counsel.

# Facts and Procedural History

The relevant facts were recited by a panel of this Court on direct appeal, as follows:

> Shortly before 8:45 p.m. on November 1, 2008, Latanza McFerrin drove her fiancé Ronald Grayson, who stood 5'11" tall and weighed 233 pounds, to a Clark gas station in Lake County. Once there, Grayson went inside so that he could buy a pack of cigarettes. Back outside, Grayson was conversing with his friend Thomas Meadows as the duo stood in front of Grayson's vehicle. About this time, Fuentes, who stood 5'4" tall and weighed approximately 140 pounds, arrived in a burgundy Impala.
>
> Inside the gas station, Fuentes collided with Meadows and exchanged words and a handshake with him. According to

Fuentes, he approached the counter to pay for gasoline when Grayson said something to him that he perceived to be unfriendly. Fuentes testified that he felt Meadows and Grayson were attempting to "instigate" something, he felt threatened, he thought it would be best just to leave, and he left the gas station without paying for his gasoline. Tr. p. 273. Fuentes testified that, based on what Grayson said to him, he felt that he "was gonna get F***** up or I had to get out of there someway [sic], somehow." Tr. p. 278.

Fuentes walked to the parking lot, followed by Grayson, who "came directly at [him] reaching behind his back – behind his shirt, rather." Tr. p. 276. At 8:45:10 p.m., surveillance video shows Fuentes attempting to punch Grayson, a blow that did not land. Grayson backed up and then moved toward Fuentes, who had by this time drawn his illegally-possessed hand-gun. At 8:45:11 p.m., Fuentes shot Grayson in the left arm. Within two seconds, Grayson went to his knees in the parking lot and raised his arms and hands in front of him. Despite Grayson's now defense-less position, Fuentes shot him again, this time in the chest, killing him.

*Fuentes v. State*, 952 N.E.2d 275, 276-77 (Ind. Ct. App. 2011).

[4] On October 24, 2008, the State charged Fuentes with murder and Class C felony carrying a handgun without a license. On October 14, 2010, following a bifurcated trial, a jury found Fuentes guilty as charged. He was given consecutive sentences of fifty-eight years of incarceration for murder and five years for carrying a handgun without a license.

[5] Fuentes appealed, raising an issue of whether the trial court abused its discretion in instructing the jury on self-defense, effectively depriving him of the

opportunity to present his self-defense claim. *Id.* at 276. A panel of this Court concluded that "the jury was not properly instructed on the law of self-defense." *Id.* at 279. However, the Court conducted a harmless error analysis and ultimately affirmed Fuentes's conviction:

> Any instructional error that occurred here was harmless, as we conclude that the jury could not have properly found that Fuentes acted in self-defense when he shot Grayson a second time. After the first shot, Grayson went to his knees and put his arms and hands up in a defenseless position. Any threat Grayson had posed to Fuentes had been neutralized, and Fuentes's right to self-defense therefore ceased. Instead of seeking to disengage at that point, Fuentes stood his ground, kept his weapon trained on Grayson, hesitated a moment, and shot him again. Under the facts of this case, Fuentes's second shot at Grayson fatally undercuts his claim of self-defense. Any error the trial court committed in instructing the jury was therefore harmless.

*Id.* at 280. On October 19, 2011, the Indiana Supreme Court denied Fuentes's petition for transfer. *Fuentes v. State*, 962 N.E.2d 650 (Ind. 2011).

[6] On May 16, 2012, Fuentes filed a pro-se motion for post-conviction relief, alleging that he had received ineffective assistance from his trial and appellate counsel. On March 21, 2014, with the assistance of counsel, Fuentes filed an amended petition. Evidentiary hearings were conducted on May 6, 2014 and on July 8, 2014.

[7] Fuentes contended that factual error had permeated the trial and appellate proceedings; specifically, concerning whether the first shot had been the fatal shot. According to Fuentes, his trial attorney had failed to convey to the jury

this salient fact and his appellate attorney had failed to prevent the appellate court's acceptance of factual error when conducting a harmless error analysis. Also, Fuentes claimed that his trial attorney should have tendered an instruction on a lesser-included offense.

On May 13, 2015, the post-conviction court issued findings of fact and conclusions of law and an order denying Fuentes post-conviction relief. He now appeals.

# Discussion and Decision

## *Standard of Review*

The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

## Self-Defense

Defense of self or others as an affirmative defense is established by Indiana Code Section 35-41-3-2(c): "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force."

> To support a claim of self-defense, a defendant must have acted without fault, been in a place where he had a right to be, and been in reasonable fear or apprehension of bodily harm. *Brewer v. State*, 646 N.E.2d 1382, 1386 (Ind. 1995). The defendant's belief … must be reasonable and in good faith, and his "reaction to that belief must be reasonable based upon the surrounding circumstances under which the events have occurred." *Geralds v. State*, 647 N.E.2d 369, 373 (Ind. Ct. App. 1995).

*White v. State*, 699 N.E.2d 630, 635 (Ind. 1998).

## Effectiveness of Trial Counsel

Fuentes contends he was denied the effective assistance of trial counsel in two respects: trial counsel (1) failed to adequately review the surveillance video in order to perceive and argue that the first shot was the fatal one that struck Grayson in the chest and (2) did not tender an instruction on a lesser-included offense.

Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland*. *Id.* To prevail on an ineffective assistance of counsel claim, a defendant must

demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind. 1999) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*, 466 U.S. at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." *Id.*

[13]    We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. *Id.* In sum, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so

deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

[14] At the post-conviction hearing, Fuentes focused upon the sequence of shots depicted in State's Exhibit 10, the surveillance video, evidently persuaded that his defense of self-defense would have been viable had the jury understood the first shot to be the fatal shot. The surveillance video was played for trial counsel and appellate counsel. Trial counsel, Darnail Lyles ("Lyles"), was initially unable to opine as to the sequence of shots, but ultimately testified that he heard only two shots and the shot to the chest "looked like" it was "the first one." (P.C.R. Tr. at 66.) The appellate attorney, Marce Gonzalez ("Gonzalez"), "could not tell which" was the chest shot. (P.C.R. Tr. at 87.)

[15] The crux of Fuentes' position in the post-conviction court was that, had trial counsel prepared more thoroughly, he would have been earlier convinced of the proper sequence of shots and prepared to argue before the jury that Fuentes did not fire a fatal shot into a defenseless victim already on his knees. According to Fuentes, had appellate counsel in turn reviewed State's Exhibit 10, he could have argued for the continued viability of self-defense and prevented the appellate court's reliance upon the harmless error doctrine.

[16] The post-conviction court concluded in relevant part: "the fact that Mr. Fuentes' counsel did not specifically argue whether the killing shot was the first shot to hit the victim, it would not have made a difference in the outcome. Trial and appellate counsel made sound strategic decisions." (App. at 114.)

[17]     Our review of the trial record reveals no dispute that Fuentes fired two shots into Grayson, one to his chest and one in his arm. Also, the pathologist testified that Grayson had sustained a fresh knee abrasion. By all indications, Grayson was on his knees when the final shot was fired. The prosecutor argued to the jury that State's Exhibit 10 depicted Fuentes raising his gun, shooting into Grayson's arm, Grayson sinking to his knees, and Fuentes inflicting a second shot "directly into [Grayson's] chest." (Tr. at 315.) Trial counsel then challenged that description:

> How on earth can Ms. Massa tell you that the first shot to – to Ron was in his arm? Who gave us evidence of that? You looked at the video. Did you see the first shot to the arm or the first or second shot to the chest? There's no evidence of what shot hit where. None. And this is all about evidence, not what the State wants to bully you into believing.

(Tr. at 321.) Lyles subsequently urged the jury, "You got to watch the movie and the time." (Tr. at 324.) As such, trial counsel invited the jury to rely upon their own perceptions of the evidence and not those of the prosecutor. Clearly, this was within the range of reasonable professional norms.

[18]     During the elicitation of post-conviction testimony, Fuentes at best demonstrated that different conclusions could be drawn from State's Exhibit 10, as to the sequence of the gunshots. However, it was not the function of the post-conviction court – or this Court – to reweigh the evidence and determine that one conclusion as opposed to another should have been drawn. Trial counsel vigorously argued that Fuentes acted out of fear and that his actions

were reasonable. After repeatedly viewing State's Exhibit 10, the jury rejected the theory of self-defense.[1] The rejection of that theory was not due to an inadequacy on the part of counsel. Trial counsel's efforts and strategy, although they did not ultimately achieve the result desired by Fuentes, were not so unreasonable as to constitute ineffective assistance of counsel. *See Badelle v. State*, 754 N.E.2d 510, 539 (Ind. Ct. App. 2001) (deciding in relevant part that, when trial counsel's efforts were "more than adequate" to support a chosen defense, counsel's decision not to seek out additional witnesses was a judgment call within the wide range of reasonable assistance), *trans. denied.*

[19] As for an instructional omission, Fuentes generically claims that Lyles "was ineffective for failing to tender an instruction on a lesser included offense." (Appellant's Br. at 11.) He does not develop an argument as to what lesser-included offense might have had a probability of success. Rather, he acknowledges Lyles' testimony at the post-conviction hearing that Fuentes had expressed his desire for an "all or nothing" strategy of self-defense, and then suggests that counsel should have continued to confer with him on this decision. (P.C.R. Tr. at 61.) Fuentes' bald assertion has not established deficient performance of trial counsel in this regard.

---

[1] During deliberations, the jury twice requested, and were given, another viewing of State's Exhibit 10.

## *Effectiveness of Appellate Counsel*

[20] A defendant is entitled to the effective assistance of appellate counsel. *Stevens v. State*, 770 N.E.2d 739, 760 (Ind. 2002). The two-pronged standard for evaluating the assistance of trial counsel first enunciated in *Strickland* is applicable to appellate counsel ineffective assistance claims. *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind. 1997). There are three basic categories of alleged appellate ineffectiveness: (1) denying access to an appeal, (2) waiver of issues, and (3) failure to present issues well. *Id.* at 193-95. Here, the third category is implicated, as Fuentes argues that Gonzalez properly raised instructional error but, had he been adequately prepared, would have been able to convince the appellate court that the instructional error was not harmless.

[21] Fuentes asserts that Gonzalez did not personally view State's Exhibit 10. At the post-conviction hearing, he offered testimony from a court reporter having custody of that exhibit to the effect that appellate counsel had not made a request to examine State's Exhibit 10. Again, Fuentes' argument distills to his insistence that his appellate counsel should have drawn a particular conclusion as to the sequence of shots and "rebut[ted] the State's claim that Mr. Fuentes shot and killed Grayson after he was down on his knees and in a defenseless position." (Appellant's Br. at 13.) However, even after viewing State's Exhibit 10 in post-conviction proceedings, Gonzalez was unable to testify to the conclusion desired by Fuentes.

Fuentes fired a second shot into an unarmed man sinking to his knees.[2] Regardless of whether the second shot was the fatal shot, or a follow-up shot, Fuentes fired multiple times. It is well-settled that firing multiple shots undercuts a claim of self-defense. *Randolph v. State*, 755 N.E.2d 572, 575 (Ind. 2001). A more nuanced argument by appellate counsel would not have prevented a panel of this Court from employing a harmless error analysis.

# Conclusion

Fuentes was not denied the effective assistance of trial or appellate counsel. The post-conviction court properly denied the petition for post-conviction relief.

Affirmed.

Vaidik, C.J., and Crone, J., concur.

---

[2] State's Exhibit 39, a still photograph derived from State's Exhibit 10, depicts the victim with his hands over his head as Fuentes holds his gun trained on the victim.